1
2
3
4
5
6
7
8                              UNITED STATES DISTRICT COURT
                               WESTERN DISTRICT OF WASHINGTON
9                                        AT TACOMA
10
11    DONALD L. PATE,
12                    Plaintiff,              NO. C07-5331 KLS
13           v.
14    KITSAP COUNTY, a political subdivision of   ORDER GRANTING PARTIAL
      the State of Washington, TERRY K.           SUMMARY JUDGMENT
15    COUSINS, INDIVIDUALY AND IN HER
      OFFICIAL CAPACITY AS A Kitsap County
16    Corrections Officer; and STATE OF
      WASHINGTON,
17
                      Defendants.
18
19

20          This matter comes before the Court on the Defendants' Motion for Summary Judgment (Dkt.

21   #69).  The Plaintiff has filed his response and the Defendants filed their Reply.  The matter is now ripe for

22   consideration by the Court.

23                          CLAIMS REMAINING FOR RESOLUTION

24          The Plaintiff alleged four causes of action, to include (1) violation of his 42 U.S.C. § 1983 civil

25   rights; (2) negligent infliction of emotional distress; (3) negligence; and (4) deliberate indifference.

26          The Plaintiff conceded, in his response, that he does not have a viable claim for negligent

27   infliction of emotional distress and that he does not have a § 1983 claim against Kitsap County.  In

28   addition, the Court notes that the claim of deliberate indifference is repetitious of the § 1983 claim.

The claims remaining, therefore, for resolution include (1) violation of § 1983 claim by defendant Terry K. Cousins and (2) negligence on the part of Kitsap County.

Based on the pleadings filed in support of and in opposition to the Defendants motion, the Court is granting summary judgment as to the Plaintiff's claim that defendant Terry K. Cousins violated his constitutional rights.

However, with regard to the negligence claim, this court will be schedule oral argument as to that claim.

FACTS

The following recitation of facts is presented in the light most favorable to the non-moving party, Donald Pate, and just to the extent they are pertinent to the 41 U.S.C. § 1983  Unless noted otherwise, they are undisputed.

On July 12, 2005, Donald Pate was an inmate at the Kitsap County Corrections and Detention Center, having been transferred there from Stafford Creek Corrections Center for the purpose of testifying in a criminal trial.

On July 21, 2005 Mr. Pate fell as he was getting down from his upper bunk bed.  As a result of the fall he broke his left wrist.  The specifics as to how the fall occurred are in dispute and not relevant for determination regarding the Plaintiff's § 1983 claim.

Mr. Pate was transferred to Harrison Memorial Hospital and properly treated.  He was returned to the Kitsap County Jail on July 24, 2005 at approximately 1:30 p.m.  He was in a single-man cell in one of the South Pods - which Mr. Pate refers to as "the hole."  According to Lt. Roxane Payne, these units are frequently utilized as housing for inmates with medical needs or restrictions, because contact with other inmates is restricted, and only lower-bunks are available.

Sometime around 4:00 p.m. on July 24, 2005, after his placement in this single-man cell, Mr. Pate stood up, passed out and fell to the floor, and injured himself again.  A nurse responded to Mr. Pate in his cell and the notes show that an assessment was made by the nurse at that time.  Mr. Pate was transferred to the hospital at approximately 4:23 p.m.  He returned to the Kitsap County jail by 11:00 p.m. that same evening.

Mr. Pate complains that after his fall on July 24, 2005, and before he was transported to the

1    hospital, that Officer Cousins and a nurse were talking among themselves and, to his understanding, were

2    planning on only taking his temperature and sending him back.  It was only after he stated that he was

3    going to give this information to his attorney that a  call was made to the hospital and he was taken back

4    to the hospital.

5         Upon his return Mr. Pate was housed in a crisis cell which is a padded cell that has no fixed

6    furnishings.  The cell has a hole in the floor to use for the toilet and a mattress on the floor.  The cell is

7    monitored by video surveillance and has a window through which officers can check on the inmate on an

8    hourly basis.

9         Mr. Pate asserts that Defendant Cousins's was responsible for placing him in the crisis cell.  He

10   reached this conclusion based on what a lady told him.  At his deposition, he also asserted that Defendant

11   Cousins "taunted" him through the night.  The evidence is, however, that Defendant Cousins's worked the

12   day shift which runs from 6:00 a.m. to 2:00 p.m.  She was not present when Mr. Pate was returned from

13   the hospital that night and the records indicate that Corrections Sgt. Johnson determined Mr. Pate's

14   housing on his return from the hospital.  Since Mr. Pate's assertion was based on hearsay and not personal

15   knowledge, this is not a material disputed fact.  With regard to the "taunting" allegation, if it did occur, it

16   would have to have been after 6:00 a.m.

17        On the morning of July 25, 2005 the on-duty nurse, Dara Morgan, examined Mr. Pate and made

18   note of her findings.  The plan noted that Mr. Pate was leaving for prison that day and a transfer summary

19   was done.  A call would be placed regarding Mr. Pate's fever and hospital records will be sent.  She

20   wanted him to drink six-ounce glasses of water every half hour and she gave him medication at 9:00 a.m.

21   She noted that Mr. Pate was released from the crisis cell before the scheduled check at 10:30 a.m.  He was

22   transported back to the Washington Corrections Center in Shelton at 11:30 a.m. that same morning.

23        In his declaration dated November 7, 2008 Mr. Pate, for the first time, specifically asserts that

24   Defendant Cousins ignored his requests for help because of the pain he felt.  His deposition testimony,

25   however,  was vague as to who he complained of pain to other than to the guards in general.  This dispute

26   in facts is not, however, a material dispute.

27                                SUMMARY JUDGMENT STANDARD

28        Pursuant to Fed. R. Civ. P. 56 ( c), the court may grant summary judgment "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex Corp., v. Catrett,* 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita elec. Indus. Co. V. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986); *T.W. Elec. Service In. V. Pacific Electrical Contractors Association,* 809 F.2d 626, 630 (9th cir. 1987).

## 24 U.S.C. § 1893 - CIVIL RIGHTS VIOLATION

Mr. Pate alleges that Defendant Terry Cousins violated his civil rights by showing deliberate indifference to his medical needs. The only time frame in which this claim applies is between 6:00 a.m. (when Defendant Cousins started her shift that morning) and 10:30 a.m. on July 25, 2005, when the Plaintiff was removed from the crisis cell. There can be no claim for deliberate indifference for the time between his second fall and being taken to the hospital as the records show this all occurred within 30 minutes and that he was in fact seen for his medical needs at the hospital.

42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the constitution. To succeed on such a claim, the Plaintiff must prove that the following: (1) that the individual defendant deprived him of a federal constitutional or statutory right; and (2) the defendant was acting under color of law. This second factor requires a showing of personal participation by the named defendant.

It is not disputed in this case that Defendant Cousins was acting under color of state law. The issue is whether or not Defendant Cousins actions were deliberately indifferent to Mr. Pate's serious medical needs. Defendant Cousins would be liable under this claim upon a showing that she not only

denied the Plaintiff needed medical care and that she knew or and disregarded an excessive risk to inmate health and safety. As the Defendants noted in their brief, "In order to know of the excessive risk, it is not enough that the person merely 'be aware of facts from which the inference could be drawn that a substantial risk of serous harm exists, []he must also draw the inference"...If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. County of Washoe, Nevada,* 290 F.3d 1175, 1187 (9th Cir. 2002)(quoting *Carnell v. Grimm,* 74 F.3d 977, 979 (9th Cir. 1996).

The undisputed material facts before this court do not support Mr. Pate's claim of deliberate indifference. First, the undisputed evidence before the Court is that Mr. Pate was tended to by a nurse on duty, was given medication and examined. The nurse noted that Mr. Pate had a fever and her plan was to pass that information on to WCC. At the most, according to Mr. Pate Defendant Cousins "taunted" him and ignored some general requests for help. He was, however, being cared for by a medical person. Further, there is no evidence before the court that Mr. Pate faced a "substantial risk of serious harm." He had been seen at the hospital twice, had been seen by the nurse on his return to Kitsap County detention facility, and had been given pain medication.

In addition, no evidence has been presented to support a conclusion or even an inference that Defendant Cousins ever knew that a substantial risk of serious harm existed nor was there any reason for her to suspect such a thing. Mr. Pate was under the care of the on-duty nurse who had seen him and provided him with appropriate medical care. That care noted that Mr. Pate had a fever and was feeling pain. She made the determination as to what should or should not be done and that determination was not interfered with in any way by Defendant Cousins.

There is no showing of deliberate indifference by Defendant Cousins and this claim is DISMISSED.

DATED this 20th day of November, 2008.

Karen L. Strombom
United States Magistrate Judge

Order Granting Partial Summary Judgment

Page - 5