UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONALD L. PATE,

    Plaintiff,

v.

KITSAP COUNTY, a political subdivision of the State of Washington, TERRY K. COUSINS, INDIVIDUALY AND IN HER OFFICIAL CAPACITY AS A Kitsap County Corrections Officer; and STATE OF WASHINGTON,

    Defendants.

NO. C07-5331 KLS

ORDER GRANTING (1) DEFENDANT'S MOTION IN LIMINE AND (2) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

By prior order, this Court granted the Defendants' Motion for Summary Judgment regarding the Plaintiff's claims for violation of his 42 U.S.C. § 1983 civil rights, negligent infliction of emotional distress and deliberate indifference. The undersigned then requested oral argument on the remaining state law claim of negligence. In addition, the Court asked the parties to address the lurking issue regarding the admissibility of the testimony of Warren Cook, the Plaintiff's expert witness. Finally, the parties agree that the only remaining defendant is Kitsap County.

DEFENDANTS MOTION IN LIMINE

The Defendants filed their Motion in Limine to Exclude Testimony of Warren Cook (Dkt. #90)

along with the declaration of Ione George (Dkt. #91) and Plaintiff filed his Response (Dkt. #92). During oral argument, counsel for the Plaintiff agreed that Mr. Cook was not a jail design expert. In addition, all parties were in agreement that only those portions of Mr. Cooks report as they related to the Plaintiff's negligence claim were relevant and pertinent to this Court's determination.

PLAINTIFF'S NEGLIGENCE CLAIM - CLASSIFICATION

The Plaintiff asserts that his negligence claim is made up of two parts. The first issue is with regard to classification. The Plaintiff alleges that the Kitsap County jail was negligent in how it went about classifying Mr. Pate and that had the classification staff followed proper procedure, Mr. Pate would have been assigned to a lower bunk and his fall from the upper bunk therefore would not have occurred and he would not have been injured.

It is undisputed, for purposes of the motions before this Court, that Mr. Pate was given a Health Status Report (HSR) when he was incarcerated at the Washington Correctional Center in Shelton. According to the Plaintiff's Complaint, this HSR was dated April 21, 2005. While at Shelton Mr. Pate was given a lower bunk, as required by the HSR. Mr. Pate was subsequently transferred to Stafford Creek Correctional Center (SCCC) and while at that facility he was assigned to a top bunk with no medical restrictions. Both of the correctional facilities at Shelton and Stafford Creek are part of the Washington State Department of Corrections (DOC).

On July 12, 2005, Mr. Pate was transferred to Kitsap County Jail so he could testify in a criminal trial. The Kitsap County Jail is not a part of the Department of Corrections. The Kitsap County Jail did not receive any documentation from SCCC restricting bed placement for Mr. Pate.

When Mr. Pate was booked into the county jail, he advised the booking officer that he needed a lower bunk. Mr. Pate was initially assigned to a single cell but he was later transferred to general population and given an upper bunk. He continually requested a lower bunk from the various guards he saw but he did not request any medical evaluation from the County Jail to assess his need for placement in a lower bunk. Mr. Pate fell from his upper bunk on July 21, 2005 and as a result of the fall broke his left wrist.

Mr. Cook, Plaintiff's expert witness, asserts that the Kitsap County Jail staff was negligent in that the booking staff should have contacted the Washington State Department of Corrections to confirm Mr. Pate's statement that he had a medical condition which required his placement in a lower bunk. In the "facts" section of Mr. Cook's written report, he notes that Mr. Pate was transferred from the Washington Corrections Center in Shelton to the Kitsap County Jail. This is not correct. Mr. Pate was transferred from the SCCC directly to the Kitsap County Jail. He had previously been transferred from Shelton to SCCC.

As noted above, Mr. Cook is of the opinion that the Kitsap County Jail booking officer should have contacted the Washington Department of Corrections to verify the Plaintiff's statement regarding the need for a lower bunk. It is unclear to this Court who within DOC Mr. Cook believes the booking officer should have contacted and there is nothing in the voluntary standards cited by Mr. Cook which would require such contact. Further, it is unclear what Mr. Cook means by his assertion that the officer should have contacted the Department of Corrections. The Department of Corrections is a large state department and there are no facts before this Court which could lead this Court to conclude that contacting someone within the DOC would have resulted in receiving any information regarding an HSR issued while the Plaintiff was being processed at Shelton. If Mr. Cook thought that the booking officer should have contacted the Plaintiff's most recent place of incarceration to determine any health status reports, contacting Stafford Creek would have resulted in the report that there were no such restrictions. It is unclear why the booking officer should be required to contact Shelton to determine whether the Plaintiff had an HSR when incarcerated at that institution since Mr. Pate had been transferred to Stafford Creek some time prior to his transfer to Kitsap County. Finally, there is no evidence before the Court that supports the inference that issuance of an HSR two institutions ago requires utiliation of that HSR at the Kitsap County Jail.

Expert testimony is admissible pursuant to Federal Rule of Evidence 702 if it is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993). The Court has an obligation to serve as a "gatekeeper" to ensure that the proffered testimony meets Rule 702's reliability standards by making a preliminary determination that the expert's testimony is reliable.

> The trial court's "special obligation" to determine the relevance and reliability of an expert's testimony, *Kuhmo Tire,* 526 U.S. at 147, 119 S.Ct. 1167, is vital to ensure accurate and unbiased decision-making by the trier of fact. *Kuhmo Tire* described the "importance of *Daubert's* gatekeeping requirement . . . to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

*ElSayed Mukhtar v. California State University,* 299 F.3d 1053, 1063-64 (9th Cir. 2002).

While *Daubert* set forth a non-exhaustive list of factors for determining whether expert testimony is sufficiently reliable to be admitted into evidence, it is clear that a trial court "not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliablity. *Id. at p. 1064* (*citing United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000)).

Viewing the evidence in the light most favorable to the non-moving party, while still meeting its obligation to ensure the requirements of Rule 702 are met, this Court concludes that Mr. Cook's proffered expert testimony regarding the classification issue is not reliable. There is nothing in the Kitsap County Policy and Procedures, as cited by Mr. Cook, which supports his conclusion that the classification officer had the duty to call someone, somewhere in the Department of Corrections to see if there were medical restrictions on Mr. Pate regarding the need to avoid an upper bunk. There is nothing in the cited Policy and Procedures which would require the classification officer to contact the Washington Correction Center at Shelton regarding any medical limitations, particularly in light of the fact that Mr. Pate had been transferred to Stafford Creek Correctional Center (SCCC) and while at SCCC he had no medical restrictions in place and he was assigned to an upper bunk. Further, Mr. Cook offers no support for the underlying assumption in his opinion that a medical restriction included at a previous facility requires the same limitation at a new facility, particularly when a health restriction was two institutions ago. The Court finds that the "expert" testimony of Mr. Cook appears to be more of a personal opinion and does not rely on any firmly established policies and procedures or any other types of guidelines applicable to correctional facilities.

Finally, Mr. Pate never once requested a medical evaluation at Kitsap County Jail. It is undisputed that a guard told him to do so and that Mr. Pate's response was that he had made such a

request. Truth is, Mr. Pate had not done so. The Court is GRANTING the Defendant's motion to exclude Mr. Cook's testimony as it pertains to the classification issue.

PLAINTIFF'S NEGLIGENCE CLAIM - DESIGN OF BUNK BED

The second aspect of the Plaintiff's negligence claim is based on the County's knowledge that Kelly Brown, another inmate at the jail, fell from an upper bunk on December 27, 2003, one year and seven months prior to Mr. Pate's fall. According to Mr. Brown's Complaint, filed in this Court, he sustained blunt abdominal trauma, severe neck strain and a brain concussion. Mr. Brown asserted that "there are no devices other than a stationary stool and a table bolted to the wall in each cell to assist inmates in getting up to and down from the top bunk. [T]he surface of the stool and table are extremely slippery and when I tried to step onto the table I slipped and fell." While Kitsap County disputes both the manner in which Mr. Brown fell and any resultant injury, for purposes of this motion, the Court accepts Mr. Brown's assertions as true.

Mr. Pate states that he slipped and fell when he was trying to exit the upper bunk and that as a result of the fall he injured his left wrist and ribs and further that the injury to his left wrist required surgery.

Mr. Cook concludes that the County was negligent "in not providing a safe means for inmates to enter and exist [sic] the upper bunks within their jail cells, without the risk of slipping and falling." He further points out that the County did not provide a safe alternative which would have been a ladder.

Mr. Cook places reliance for his conclusion that the County was negligent on the County's alleged violation of ACA Professional Standard 4-ALDF-1A-08 (a voluntary standard followed by Kitsap County) which reads as follows:

> The facility injury experience for serious inmate injuries is analyzed at least annually, problems are identified, and corrective actions are developed and implemented, if applicable.

Mr. Cook concludes, without any analysis whatsoever, that had the County analyzed Mr. Brown's fall (the details of which are sketchy) that the corrective action they should have taken was the installation of ladders for use by inmates assigned to an upper bunk. He admitted during his deposition testimony that would have been the required result even if the jail had a history of only one prior fall from an upper bunk. Further, the Court notes, and Mr. Cook admits, that there are no design standards which require the

Order on Motion in Limine and Order
on Motion for Summary Judgment

Page - 5

use of ladders in jail cells. Some jails provide them and some do not. Finally, as the parties stipulated, Mr. Cook is not a jail design expert.

It appears to this Court that Mr. Cook reaches his conclusion regarding the necessity of a ladder because that is his personal belief and not on the basis of an analysis required by the above cited professional standard. He merely recites the standard and then states his conclusion. He goes through no analysis or assessment as to why one prior fall, in the history of the Kitsap County Jail, would necessarily have led to his conclusion that corrective action needed to be taken and that the appropriate corrective action was the installation of ladders in all cells with bunk beds. This is insufficient to meet the reliability requirement of *Daubert*. In addition, in light of the fact that Mr. Cook is not a jail design expert, it is beyond his expertise to testify as to what changes should have been instituted based on one prior fall in the jail. The Court is GRANTING the Defendant's motion to exclude the testimony of Mr. Cook as it relates to his testimony that the County violated the voluntary standard set forth in ACA Professional Standard 4-ADLF-1A-08.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO NEGLIGENCE

As identified above, the Plaintiff's case of negligence is based on (1) failure to assign Mr. Pate to a lower bunk based on the failure to properly classify Mr. Pate when he was admitted to the Kitsap County Jail and (2) failure to provide an adequately designed bunk bed.

### BUNK ASSIGNMENT

In light of the Court's ruling regarding Mr. Cook's testimony, the Court must now review the remaining evidence to determine whether the the Defendant's Motion for Summary Judgment should be granted or denied.

With regard to the Plaintiff's claim that the County was negligent in its failure to place him in an lower bunk, the only evidence before the Court is that Mr. Pate told everyone he needed to be placed in an lower bunk. That is not sufficient, however, to sustain a claim of negligence against the County. There is no medical evidence of any kind presented to this Court which would sustain Mr. Pate's conclusion that he needed to be assigned to a lower bunk. As the County noted in its Reply at p. 10, "[a] duty of care cannot be established simply by an inmate's demands." The only evidence before this Court

is that of Mr. Pate's demands. Although he was advised by a guard at the Kitsap County Jail to request a medical assessment, he failed to do so. There is nothing before the Court to sustain a claim of negligence based on placement in an upper bunk.

## DEFECTIVE DESIGN OF BUNKS

In his Complaint, Mr. Pate asserts that the bunk beds were defectively designed because of no easy access to the top bunk was provided. Because of this defective design, Mr. Pate fell and was injured. In light of the fact that this Court has excluded the testimony of Mr. Cook regarding the lack of ladders, there appears to be no expert opinion testimony which would support the Plaintiff's design/repair theory of negligence.

## CONCLUSION

The Court is excluding the expert testimony of Warren Cook for the reasons stated above and is GRANTING the Defendant's Motion for Summary Judgment. All of Plaintiff's claims are hereby dismissed.

DATED this 2nd day of February, 2009.

*Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge

DATED this 30th day of January, 2009.

*Karen L. Strombom*
Karen L. Strombom

United States Magistrate Judge

Order on Motion in Limine and Order
on Motion for Summary Judgment

Page - 8